AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

**201 58th Street, N.E. Apartment #156**

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

CASE NUMBER:

(Further described below)

I _____Derek Anderson_____ being duly sworn depose and say:

I am a(n) __Special Agent with District of Columbia Office of Inspector General__ and have reason to believe
                                   (Official Title)
that ☐ on the person of or ☒ on the property or premises known as (name, description and or location)

**See Attachment A (which is attached and incorporated fully herein)**

in the District of Columbia, there is now concealed a certain person or property, namely (describe the person or property to be searched)

**See Attachment B (which is attached and incorporated fully herein)**

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

fruits, evidence, and instrumentalities,

concerning a violation of Title __18__ United States Code, Section(s) __§ 1028(a)(3) & (a)(7)__. The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.     ☒ YES   ☐ NO

Jonathan R. Barr
Fraud and Public Corruption Section
(202) 514-9620

Signature of Affiant
Derek Anderson, Special Agent
District of Columbia Office of Inspector General

Sworn to before me, and subscribed in my presence

_____        at Washington, D.C.
Date

_____        _____
Name and Title of Judicial Officer        Signature of Judicial Officer

## AFFIDAVIT OF SUPPORT OF A SEARCH WARRANT

I, Derek Anderson, being duly sworn, depose and say that:

### INTRODUCTION

1) I am a Special Agent with the District of Columbia Office of Inspector General and have been employed by the District of Columbia Office of Inspector General since May 2006. Prior to becoming a Special Agent with the District of Columbia Office of Inspector General ("OIG"), I was employed for more than thirteen years in various law enforcement positions including: Police Officer with the City of Gaithersburg, Maryland; Special Agent with the United States Department of Defense; Law Enforcement Ranger with the National Park Service; Criminal Investigator with the Amtrak Police; Supervisory Police Officer with the United States Department of Defense; Deputy Sheriff with Pulaski County, Virginia Sheriff's Office; Deputy Sheriff with the Montgomery County, Virginia Sheriff's Office; and a Police Officer with the Town of Pulaski, Virginia Police Department. During my law enforcement career, I have investigated several felony violations including: identity theft, credit card fraud, and numerous other general crimes. I am currently assigned to the General Investigations Unit of the OIG which is tasked to investigate matters involving Fraud, Waste, and Abuse within and/or against the District of Columbia government. I have completed numerous courses on, among other topics, criminal law, investigations and search and seizures. In addition, I have participated in the execution of several search warrants and arrest warrants in investigations of credit card fraud and identity theft. I have also participated in numerous arrest warrants in investigations which involved allegations of theft, narcotics smuggling and distribution, and assaults.

2) The information contained in this affidavit is based on my personal knowledge and observations during the course of this investigation, on information conveyed to me by other law enforcement or government officials, information conveyed to me during my investigation from other witnesses, and on my review of records, documents, and other

physical evidence obtained during this investigation. This affidavit does not set forth all information known to the Office of Inspector General about this case and is being submitted solely for the purpose of providing sufficient information to establish probable cause for the search of the premises located at 201 58th Street, N.E., Apartment #156, Washington, D.C. (as more fully identified in attachment A).

3) This affidavit contains information necessary to support an application for a search warrant to search all premises including the residential area, curtilage, and storage areas located in or corresponding to Apartment #156 at 201 58th Street, N.E., Washington, D.C. (as more fully described in Attachment A).

4) I submit there is probable cause to believe that evidence, contraband, fruits and instrumentalities of violations of 18 U.S.C. §§ 1028(a)(3) and (a)(7)(identify fraud) are presently located at 201 58th Street, N.E., Apartment #156, Washington, D.C.

### STATEMENT OF FACTS SUPPORTING PROBABLE CAUSE

5) I am the case agent assigned to this investigation into among other things: (I) whether Ralph Johnson violated the identity fraud statute, 18 U.S.C. § 1028; (ii) whether an employee of the District of Columbia Department of Human Services aided and abetted and conspired with Ralph Johnson to violate the identify fraud statute by knowingly providing Johnson with identification documents issued by the District of Columbia Department of Human Services in the names of five other people; and (iii) whether an employee of the District of Columbia Department of Human Services solicited or received a bribe or gratuity in exchange for issuing Ralph Johnson identification documents in the names of five other people.

6) An "Escaped Federal Prisoner Notice" was issued on September 2, 2003, notifying the U.S. Marshal's Service that Ralph Johnson was an escaped Federal Prisoner and that there was a warrant for Johnson's arrest. The U.S. Marshal's Service learned from a paid informant that Johnson had assumed the identify of Robert Green and was residing at 201

    58th Street, N.E., Apartment #156 in Washington, D.C. under the assumed identity of "Robert Green." The paid informant also informed the Marshal's Service that Mr. Richard Byrd-Bey, who is employed by the D.C. Department of Human Services, Income Maintenance Administration, was a friend of Johnson and was assisting Johnson. The paid informant further told the Marshal's service that Johnson was receiving D.C. Department of Human Services benefits under the assumed name of Robert Green, and that a Department of Human Services employee, possibly Richard Byrd-Bey, had assisted Johnson in obtaining these welfare benefits fraudulently.

7) On December 6, 2006, members of the Capital Area Regional Fugitive Task Force (CARFTF), U.S. Marshal's Service (USMS) arrested Ralph Johnson at his residence located at 201 58th Street, N.E., Apartment #156 in Washington, D.C. During the arrest of Ralph Johnson, law enforcement agents discovered that Ralph Johnson had on his person five photo identification cards issued by the District of Columbia, Department of Human Services, including identification cards issued in the names of Robert Green, Bennis Blount, Robert Jackson and Drew Clarence. Each identification card contained the photograph of Ralph Johnson but contained the name, date of birth, and social security number of another individual. Law enforcement agents also discovered that Ralph Johnson had on his person five Electronic Benefit Cards issued by the District of Columbia Government. These Electronic Benefit Cards appear to have been issued by the District of Columbia Government in the names of the persons identified on the identification cards found on Ralph Johnson's person. The Electronic Benefit Cards are used to obtain District of Columbia welfare benefits. It appears from District of Columbia Government records that Johnson used these Electronic Benefit Cards to obtain at least $14,387 in Food Stamp Benefits. During the arrest of Johons, the Marshal's service also found on Johnson's person two xerox copies of social security cards with

names which matched the names contained on two of the District of Columbia identification cards.

8) I have reviewed the application for welfare benefits submitted on behalf of Ralph Green, which is one of the names appearing on an identification card found on Ralph Johnson's person which identification card contained Ralph Johnson's picture. The application reflects that District of Columbia employee Richard Byrd-Bey was the employee who assisted in obtaining the benefits for Mr. Green. Richard Byrd-Bey approved Ralph Green's application as the DC Income Administration case worker.

9) During the investigation, I have interviewed the property manager for apartment # 156 at 201 58th Street, N.E., Washington, D.C. The manager has informed me that Richard Byrd-Bey, whom the manager knows, has recently attempted on multiple occasions to gain entry to the apartment to obtain certain undisclosed items from the apartment. According to the apartment manager, Richard Byrd-Bey attempted on January 12th and 17th to gain entry into apartment #156. I last spoke to the apartment manager on January 24, 2007, and the manager stated that thus far, she has refused to allow Richard Byrd-Bey entry into the apartment. The property manager also informed me that Richard Byrd-Bey is listed in the paperwork for the apartment as the emergency contact for Robert Green who rented apartment #156.

10) During the investigation, I reviewed the applications for welfare benefits submitted on behalf of Bennis Blount, Robert Jackson, and Drew Clarence. When Ralph Johnson was arrested, identification cards issued by the D.C. Department of Human Services in the names of Blount, Jackson and Clarence were found on Johnson's person. These identification cards each contained the picture of Ralph Johnson. The applications for benefits submitted on behalf of Blount, Jackson, and Clarence each reflect that D.C. Government employee Antoinette Williams was a case agent for these individuals and

that she signed each application for benefits. The applications also reflect that Antoinette Williams certified in each application that the applicant had provided a photo identification and proof of social security number at the time the application was completed.

11) Based upon my training, experience and participation in numerous identity fraud investigations involving identity theft and other fraudulent activities, I have learned and know that:

    a. Individuals involved in fraudulent activities such as identity theft, access device fraud, credit card and check fraud, often steal mail and use stolen U.S. mail to obtain other people's personal identifiers, account numbers, and access devices to perpetrate their fraudulent schemes.

    b. Individuals involved in fraudulent schemes often: place assets in names other than their own and/or place assets in corporate entities to avoid detection of by government agencies. Even though these assets are in other persons' or company names, the perpetrators of the fraudulent schemes actually beneficially own, and continue to use and exercise dominion and control over the assets.

    d. Those involved in the aforementioned criminal activity often maintain: records, receipts, notes, ledgers, credit card receipts, airline tickets, money orders, stolen mail, papers and records reflecting social security numbers, dates of birth, names, and other means of identification information used in identify fraud schemes, and other papers relating to their fraudulent schemes. It is common for those involved in the aforementioned criminal activity to keep these records and papers in areas where they are ready accessible such as their homes and cars. These individuals frequently store such information and records relating to their fraudulent schemes in computers and in electronic storage media.

    e.    It is common for persons involved in fraudulent activities to secrete the proceeds of bank transactions and other fraudulent transactions in secure locations within their residences, automobiles, businesses, and storage facilities for their ready access and also to conceal them from law enforcement.

    f.    It is common for persons involved in the aforementioned fraudulent activities to conceal in their residences, automobiles, businesses and storage facilities the fruits of their crimes which may include large amounts of currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of fraudulent activities and evidence of financial transactions relating to obtaining, transferring, secreting, or the spending of large sums of money made from engaging fraudulent activities.

    g.    Those involved in fraudulent activities commonly maintain addresses or telephone numbers in books, on papers and computers/electronic media which reflect names, addresses and/or telephone numbers of their co-conspirators and which reflect identifying information for their victims.

    h.    It is common for persons involved in identify theft and access device fraud schemes to use computers to create false identification documents that are used to facilitate the fraudulent schemes. It is also common for these persons to store information pertaining to their fraud schemes, including records related to the creation of false identification documents and letters sent to financial institutions on computer hard drives, diskettes, tapes and other media capable of storing information in a form readable by computer.

## ELECTRONIC EVIDENCE

12)    I know that computer hardware, software, documentation, passwords, and data security devices may be important to a criminal investigation in two distinct and important

aspects: (a) the objects themselves may be instrumentalities, fruits, or evidence of crime, and/or (b) the objects may have been used to collect and store information about crimes (in the form of electronic data).  Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize computer hardware, software, documentation, passwords, and data security devices, which are instrumentalities, fruits, or evidence of crime, or storage devices for information about crime.

13) Based upon the facts set forth above, there is probable cause to believe that computer hardware, software, related documentation, passwords, data security devices (as described below), and any data contained therein at the address of apartment # 156 at 201 58th Street, N.E., in Washington, D.C., were integral tools of these crimes and constitute the means of committing it.  As such, they are instrumentalities and evidence of the violations designated.  Rule 41 of the Federal Rules of Criminal Procedure authorizes the government to seize and retain evidence and instrumentalities of a crime for a reasonable time, and to examine, analyze, and test them.

14) <u>Hardware</u>:  Computer hardware consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.  Hardware includes, but is not limited to, any data-processing devices (such as central processing units); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disks drives and diskettes, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, video display monitors, and related communications devices (such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys and locks).

15) <u>Software</u>:  Computer software is digital information that can be interpreted by a computer and any of its related components to direct the way they work.  Software is stored in

electronic, magnetic, or other digital form, including zip drives. It commonly includes programs to run operating systems, applications (like tax preparation, word-processing, or spreadsheet programs), and utilities.

16) <u>Documentation</u>: Computer-related documentation consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items.

17) <u>Passwords and Data Security Devices</u>: Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation, or other programming code. A password (a string of alphanumeric characters) usually operates a sort of digital key to unlock particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital code may include programming code that creates test keys or hot keys, which perform certain preset security functions when touched. Data security software or code may also encrypt, compress, hide, or booby-trap protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

18) Based upon my knowledge, training and experience and consultations with forensic computer examiners, I know that searching computerized information for evidence or instrumentalities of crime commonly requires agents to seize most or all of a computer system's input/output peripheral devices, related software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. This is true because of the following:

a) <u>Volume of Evidence</u>: Computer storage devices (like hard disks, and diskettes) can store the equivalent of thousands of pages of information. Additionally, a suspect may try to conceal criminal evidence; he or she might store it in random order with deceptive file names. This may require searching authorities to examine all the stored

data to determine which particular files are evidence or instrumentalities of crime. This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical to attempt this kind of data search on site.

b)    <u>Technical Requirements</u>:  Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data. However, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources or from destructive code imbedded in the system as a booby trap), a controlled environment is essential to its complete and accurate analysis.

c)    The peripheral devices which allow users to enter or retrieve data from the storage devices vary widely in their compatibility with other hardware and software. Many system storage devices require particular input/output (or "I/O") devices in order to read the data on the system. It is important that the analyst be able to properly re-configure the system as it now operates in order to accurately retrieve the evidence listed above. In addition, the analyst needs the relevant system software (operating systems, interfaces, and hardware drivers) and any applications software, which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instruction manuals or other documentation and data security devices.

19) If, after inspecting the I/O devices, software, documentation, and data security devices, the analyst determines that these items are no longer necessary to retrieve and preserve the data evidence, the government will return them within a reasonable time.

20) Data analysts may use several different techniques to search electronic data for evidence or instrumentalities of crime.  These include, but are not limited to, the following: examining file directories and subdirectories for the lists of files they contain; opening or reading the first few pages of selected files to determine their contents; scanning for deleted or hidden data; searching for key words or phrases ("string searches").

Based on the foregoing information and upon my knowledge, training and experience in the investigation of identity theft, and other fraud violations, I believe that fruits and evidence of the commission of a criminal offense (18 U.S.C. §§ 1028(a)(3) and (a)(7)), as described below in Attachment B, will be found at the premises listed and described below in Attachments A, and therefore, a search warrant should be issued.

WHEREFORE, your affiant believes based on the information provided that probable cause exists for search, and seizure warrants to be issued for the above identified and described location and assets, for evidence of violations of Title 18, United States Code, Sections 1028(a)(3) and (a)(7) (identify fraud).

The statements above are true and accurate to the best of my knowledge and belief.

_____
Derek Anderson,
Special Agent, District of Columbia
Office of Inspector General

Sworn to before me this _____ day of January 2007.

_____
United States Magistrate Judge
District of Columbia

## ATTACHMENT A

### DESCRIPTION OF THE PREMISES TO BE SEARCHED

<u>201 58th Street, N.E., Apartment #156, Washington, DC</u>

201 58th Street, N.E., Apartment #156, Washington, DC 20019 is located within an apartment building described as a multi-unit, three story, red brick and tan stucco building at street address 201 58th Street, N.E., Washington, D.C., 20019. Apartment #156, is located on the ground floor of the building, and has a tan door, with a placard on the left hand side and the numbers "156" are displayed in white numbers.

**ATTACHMENT B**

<u>DESCRIPTION OF ITEMS TO BE SEIZED</u>

Evidence relating to: Ralph Johnson's use of the identities or means of identifications for other persons; Ralph Johnson's application for, or receipt of benefits in the name of another person from the District of Columbia Department of Human Services or any other Government agency; any and all communications with Richard Byrd-Bey or Antoinette Williams; and evidence relating to identify fraud violation of Title 18, United States Code, Section 1028 (identity fraud), including:

A.  DOCUMENTS AND RECORDS

1.  Records, documents, and materials containing information relating to the aforementioned criminal activity. The terms "records", "documents", and "materials" includes records in all forms, such as those on paper, in any photographic form, in any mechanical form, and any form that is stored in electronic or magnetic form on hard drives, compact disks, zip disks, magnetic tapes or floppy disks.

2.  Any ledgers, books, records, receipts, correspondence, applications, facsimile transmissions, notes or other documents, records or papers relating to: (I) the use, production or negotiation of checks, access devices, or credit cards; or (ii) the possession or use of identification cards issued in the names of persons other Ralph Johnson; (iii) the application for, or receipt of benefits in the name of anyone other than Ralph Johnson from the District of Columbia Department of Human Services or any other Government agency, and (iv) the possession or use of false identification documents or cards.

3. Bank statements, deposit slips, canceled checks and related records, credit cards, money drafts, letters of credit, wire transfers, money orders and cashier's checks and receipts, treasurer's checks, bills of sale, installment contracts, real estate records, passbooks, bank checks, safe deposit box contracts and keys, money wrappers, and any other items evidencing the obtaining, secreting, transferring, concealment, and/or expenditure of illegal proceeds.

4. Addresses and/or telephone books, Rolodex indices, and any papers reflecting names, addresses, telephone numbers, pager numbers, and fax numbers of financial institutions, and other individuals or businesses with whom a financial relationship exists, or of individuals who may appear to be involved in or related to identify fraud.

5. Indicia of occupancy, residency, rental and/or ownership of the premises to be searched, including, but not limited to, utility, land, telephone records, and lien records, purchase or lease agreements, canceled mail, canceled envelopes and keys.

6. Travel records, airline tickets, passports, visas or any other documents relating to foreign travel.

7. Receipts from United States Postal Service and/or next day carrier services documenting intra/interstate sending and receiving of documents, checks, and mailings.

8. Social Security Administration documents, including Social Security Cards and or applications for Social Security Cards, papers with social security numbers, fraudulent Identifications and identification making equipment.

9.  United States currency reasonably believed to be the proceeds from fraud schemes.

10. Photographs of or with Richard Byrd-Bey or Antoinette Williams.

11. Credit cards, in any form, and credit card account numbers, access devices, payment devices and or account numbers of any kind.

12. Mail in names other than Ralph Johnson.

13. Business, personal checks, and counterfeit checks.

14. Documents and records that contain the means of identification of persons other than Ralph Johnson.

15. Documents and records reflecting communications with Richard Byrd-Bey or with Antoinette Williams.

16. Documents and records reflecting communications with the District of Columbia Department of Human Services and applications for benefits from the District of Columbia Department of Human Services.

17. Any and all fruits, instrumentalities, and evidence of the crimes of 18 U.S.C. Sections 1028 (identity fraud).

B.  HARDWARE

18. Computer hardware, consisting of all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes, but is not limited to, any data-processing devices (such as central processing units, memory typewriters,

        and self-contained "laptop" or "notebook" computers, "palm pilots," and "schedulers"); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives and diskettes, removable magnetic disk storage drives and disks, tape drives and tapes, optical storage devices, transistor-like binary devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); and related communications devices (such as modems, cables and connections, recording equipment, RAM or ROM units, acoustic couplers, automatic dialers, programmable telephone dialing or signaling devices, and electronic tone-generating devices); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys and locks).

19. Cellular phones.

C. SOFTWARE

20. Computer software consisting of digital information which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications (like word-processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

D. DOCUMENTATION

21. Computer-related documentation consisting of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use

the computer hardware, software, or other related items.

E.  PASSWORDS AND DATA SECURITY DEVICES

22. Computer passwords and other data security devices that are designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password usually operates as a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital codes may include programming code that creates "test" keys or "hot" keys, which perform user-defined security-related functions when activated. Data security software or code which might also encrypt, compress, hide or "booby-trap" protected data to make it inaccessible or unreadable as well as reverse the process to restore the data.

23. Logs of electronic communications, disks of communications, hard copies of communications, audio cassette tapes of communications, calendars, appointment books, telephone number lists, incoming and outgoing facsimile messages, and any documentation, telephone records, bank account information or wire transfer information.

24. The terms "records," "documents," and "materials" include all of the foregoing items of evidence in whatever form and by whatever means such records, documents, or materials, their drafters, or their modifications may have been created or stored, including, but not limited to, any handmade form (such as writing, drawing, painting, with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies); any mechanical form (such

as tape recordings, cassettes, compact discs, or any information on an electronic or magnetic storage device, such as floppy diskettes, hard disks, zip disks, CD-ROMs, optical discs, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as printouts or readouts from any magnetic storage device).

25. Any and all fruits, instrumentalities, and evidence (at this time unknown) of the crimes of 18 U.S.C. Section 1028 (identity fraud).